Appeal No.: 21-3910

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

## BRIAN BRESNAHAN,

### Plaintiff/Appellant,
### v.

## CITY OF ST. PETERS, et al.,

### Defendants/Appellees.

Appeal from the United States District Court
Eastern District of Missouri
(Cause No. 4:21-cv-00058-JCH)

## <u>APPELLEES' INITIAL BRIEF</u>

Respectfully Submitted,

V. Scott Williams, #36177MO
John H. Kilper, #60997MO
HAMILTON WEBER LLC
200 N. Third Street
St. Charles, MO 63301
(636) 947-4700/Fax (636) 947-1743
swilliams@hamiltonweber.com
jkilper@hamiltonweber.com

Katrina Y. Morgan #60166MO
Jillian M. Mueller #65033MO
JACKSON LEWIS, P.C.
222 S. Central Avenue, Ste. 900
St. Louis, MO 63105
Office: 314-827-3939/Fax: 314-827-3940
katrina.morgan@jacksonlewis.com
jillian.mueller@jacksonlewis.com
*Attorneys for Defendants/Appellees*

## SUMMARY OF THE CASE

Appellant/Plaintiff Bresnahan ("Plaintiff"), a police officer formerly employed by the City, alleges that Appellees/Defendants, consisting of the City of St. Peters, Missouri ("City"), Rick Struttmann (i.e., the Chief of Police), and Russ Batzel (i.e., the City Administrator), violated 42 U.S.C. § 1983 by retaliating against him for exercising First Amendment rights. The speech at issue consists of a video clip from the animated sitcom "Paradise PD" that Plaintiff sent to a group of City police officers via a group text message. The text-messaging group was established to provide officers up-to-date information regarding the Black Lives Matter protests and general civil unrest occurring in and around the City at that time.

Plaintiff was ordered to meet with Chief Struttmann the next day, and Plaintiff resigned during that meeting. Plaintiff claims he was constructively discharged and forced to resign because he sent the text message.

On November 22, 2021, the District Court granted Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. The District Court's Judgment should be affirmed because the Amended Complaint confirms Plaintiff was neither speaking about a matter of public concern, nor speaking as a concerned citizen. The alleged speech therefore is not constitutionally protected.

Defendants also request 15 minutes for oral argument.

i

## 26.1 CORPORATE DISCLOSURE STATEMENT

The City of St. Peters, Missouri, is a municipal corporation and political subdivision of the State of Missouri.

Appellate Case: 21-3910    Page: 3    Date Filed: 04/22/2022 Entry ID: 5149916

# **TABLE OF CONTENTS**

SUMMARY OF THE CASE.........................................................................i

CORPORATE DISCLOSURE STATEMENT .......................................... ii

TABLE OF CONTENTS........................................................................ iii

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF THE CASE/FACTS .................................................1

PROCEDURAL HISTORY.....................................................................2

SUMMARY OF THE ARGUMENT .......................................................4

ARGUMENT ..........................................................................................5

  I. Standard of Review ........................................................................5

  II. The District Court's Judgment Dismissing Plaintiff's Amended
     Complaint Should Be Affirmed Because the Amended Complaint
     Fails to State a Claim for First Amendment Retaliation ......................6

CONCLUSION......................................................................................17

CERTIFICATE OF COMPLIANCE .....................................................20

CERTIFICATE OF SERVICE ..............................................................21

Appellate Case: 21-3910     Page: 4     Date Filed: 04/22/2022 Entry ID: 5149916

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................5

*Bradley v. James*, 479 F.3d 536 (8th Cir. 2007) .....................................................13

*Buehrle v. City of O'Fallon*, 695 F.3d 807 (8th Cir. 2012) ..................................7,10

*Carroll v. Pfeffer*, 262 F.3d 847 (8th Cir. 2001) .....................................................6

*Connick v. Myers*, 461 U.S. 138 (1983) ...............................................6,7,8,10,11,15

*Descrochers v. City of San Bernardino*, 572 F.3d 703 (9th Cir. 2009) ...........8,10,11

*Domina v. Van Pelt*, 235 F.3d 1091 (8th Cir. 2000) ............................................8,11

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ......................................................6,13,14

*Glick v. W. Power Sports, Inc.*, 944 F.3d 714 (8th Cir. 2019) ..................................5

*Graziosi v. City of Greenville Miss.*, 775 F.3d 731 (5th Cir. 2015) ........................8

*Groenewold v. Kelley*, 888 F.3d 365 (8th Cir. 2018) .............................................13

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...........................................................16

*Henry v. Johnson*, 950 F.3d 1005 (8th Cir. 2020) .................................................10

*Hernandez v. City of Phoenix*, 482 F. Supp. 3d 902 (D. Ariz. 2020) ..............8,9,12

*Littrell v. Franklin*, 388 F.3d 578 (8th Cir. 2004) ..................................................16

*Lyons v. Vaught*, 875 F.3d 1168 (8th Cir. 2017) ................................................12,13

*McCullough v. Univ. of Ark. For Med. Scis.*,
559 F.3d 855 (8th Cir. 2009) .................................................................................6

Appellate Case: 21-3910   Page: 5   Date Filed: 04/22/2022 Entry ID: 5149916

*Monell v. Dept. of Social Services of New York*,
    436 U.S. 658 (1978) ......................................................................4,16

*Nagel v. City of Jamestown*, 952 F.3d 923 (8th Cir. 2020) ...................................12

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) ........................................................6

*Saucier v. Katz*, 533 US. 194 (2001) ......................................................................16

*Sparr v. Ward*, 306 F.3d 589 (8th Cir. 2002) .......................................................8,11

*Stockley v. Joyce*, 963 F.3d 809 (8th Cir. 2020) ......................................................5

*Tindle v. Caudell,* 56 F.3d 966 (8th Cir. 1995) ..............................................12,14,15

*Webb v. City of Maplewood*, 889 F.3d 483 (8th Cir. 2018) .....................................17

*Wright v. City of Salisbury*, 656 F. Supp. 2d 1013 (E.D. Mo. 2009) ......................7

## <u>Court Rules:</u>

Fed. R. Civ. P. 12(b)(6) ...............................................................................5

Appellate Case: 21-3910   Page: 6   Date Filed: 04/22/2022 Entry ID: 5149916

## STATEMENT OF THE CASE

### Statement of the Facts[1]

Plaintiff is a police officer formerly employed by the City until his employment terminated on June 10, 2020. *See* Joint Appendix[2] A-039; R. Doc. 28, at ¶ 5. On June 9, 2020, Plaintiff shared a twitter post via text message that contained a video clip from the then current animated sitcom "Paradise PD" to his fellow police officers. Joint App. A-039; R. Doc. 28, at ¶ 7. The video clip shows an African-American police officer accidentally shoot himself, and the media headlines the issue as "another innocent black man shot by a cop." *Id.*

Plaintiff sent the clip to a "private and closed" text group-chat where all of the group members were fellow officers within the City's Police Department. Joint App. A-039; R. Doc. 28, at ¶ 9. The text-messaging group was created to provide officers up-to-date information regarding the Black Lives Matter ("BLM") protests within the City, and contained both work-related and unrelated comments. *Id.* At that time, the City, St. Charles County, and surrounding counties were experiencing general civil unrest that led to some rioting and looting, which was widely covered by the media. Joint App. A-039; R. Doc. 28, at ¶ 10.

_____

[1] The facts are taken from Plaintiff's First Amended Complaint as required by the applicable standard of review for a Motion to Dismiss.

[2] All further citations to the Joint Appendix shall appear as "Joint App. A-____".

1

After Plaintiff sent the video clip, one of the other officers in the group voiced displeasure with Plaintiff circulating the video and disagreed with the message of the shared video. Joint App. A-039; R. Doc. 28, at ¶ 11. The next day, on June 10, 2020, Plaintiff was ordered to meet with Chief Struttmann. Joint App. A-040; R. Doc. 28, at ¶ 14.

Plaintiff alleges that during that meeting, Chief Struttmann berated Plaintiff for circulating the video and told Plaintiff that if he resigned there would be no internal investigation. Joint App. A-039; R. Doc. 28, at ¶ 15. Plaintiff alleges Struttmann also told him there would be an investigation if Plaintiff did not resign, and that "Struttmann would ultimately recommend Plaintiff be terminated and that Defendant Russ Batzel would terminate Plaintiff's employment." *Id*. Plaintiff resigned during his meeting with Struttmann. Joint App. A-039; R. Doc. 28, at ¶ 17.

## Procedural History

Plaintiff initially filed his action in the Circuit Court for St. Charles County, Missouri, on December 11, 2020. Joint App. A-002; R. Doc. 7. Defendants removed the case to federal court and filed their Combined Motion to Dismiss. Joint App. A-002, A-013; R. Doc.1, 11.

On July 27, 2021, the District Court granted Defendants' Motion to Dismiss finding, among other things, that Plaintiff's initial Complaint failed to contain factual allegations sufficient to permit the Court to determine whether the alleged

2

speech was protected speech within the meaning of the First Amendment. Joint App. A-027; R. Doc. 27. However, the District Court granted Plaintiff leave to file an amended complaint. Joint App. A-037; R. Doc. 27, p.11.

Plaintiff filed his First Amended Complaint on August 11, 2021. Joint App. 038-043; R. Doc. 28. Defendants filed their Combined Motion to Dismiss directed at the First Amended Complaint on August 25, 2021. Joint App. 043-046; R. Docs. 30; 30-1.

On November 22, 2021, the District Court entered its Memorandum and Order granting Defendants' Motion to Dismiss, and dismissing Plaintiff's First Amended Complaint with prejudice. Joint App. 061-071; R. Docs. 41; 42. The Court found that any message that might have been conveyed by Plaintiff's distribution of the video clip touched "only lightly, if at all, on matters of public concern," and was incidental to Plaintiff's primary thrust, which appeared to be nothing more than a "crass attempt at humor." Joint App. 068; R. Doc. 41, p. 8 (internal citation omitted).

The District Court concluded that "[b]ecause Plaintiff has not plausibly alleged that he spoke on a matter of public concern when he sent the cartoon video clip to his co-workers," his Amended Complaint failed to state a cognizable First Amendment retaliation claim. Joint App. 069; R. Doc. 41, 9. The Court concluded that Defendants Struttmann and Batzel were therefore entitled to qualified immunity,

Appellate Case: 21-3910     Page: 9     Date Filed: 04/22/2022 Entry ID: 5149916

and that Plaintiff also failed to state a claim against the City for municipal liability under *Monell v. Dept. of Social Services of New York*, 436 U.S. 658 (1978).

Plaintiff filed his Notice of Appeal on November 22, 2021. R. Doc. 43.

## SUMMARY OF THE ARGUMENT

Plaintiff claims his First Amendment rights were violated when he was allegedly forced to resign after sending a text message containing the video clip. Plaintiff's original Complaint lacked allegations about what the video showed, or what, if anything, Plaintiff said about the video that constituted protected speech, and the Complaint was therefore dismissed.

Plaintiff subsequently filed an Amended Complaint, which again failed to allege facts establishing Defendants' conduct violated his First Amendment rights. Although Plaintiff included some additional description of the content of the video, he did not incorporate a copy of the video or provide sufficient content for the court to conduct the "form, content and context" analysis to evaluate Plaintiff's claim. Rather, Plaintiff claims in conclusory fashion that the video clip depicting "a black police officer [who] accidentally shoots himself and the media headlines the issue as 'another innocent black man shot by a cop'" is protected speech because it is "obvious satire" critical of BLM.

The little detail provided about the video confirms Plaintiff was neither speaking about a matter of public concern, nor speaking as a concerned citizen.

4

Rather, at best, Plaintiff's "speech" (i.e. the sharing of the video clip) related only marginally to an issue of public importance and was merely incidental to Plaintiff's primary objective, which appears to have been nothing more than a crass attempt at humor. The alleged speech does not qualify for constitutional protection, and the District Court's Judgment dismissing Plaintiff's claims should be affirmed.

## **ARGUMENT**

### I. **Standard of Review**

A decision by the District Court granting a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is reviewed *de novo*, "'accepting as true all factual allegations in the light most favorable to the nonmoving party.'" *Stockley v. Joyce*, 963 F.3d 809, 816 (8th Cir. 2020) (quoting *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019)).

Detailed allegations are not necessarily required to survive a motion to dismiss; however, at a minimum "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Stockley*, 963 F.3d at 817-18 (internal citation omitted). In addition, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**II.** **The District Court's Judgment Dismissing Plaintiff's Amended Complaint Should Be Affirmed Because the Amended Complaint Fails to State a Claim for First Amendment Retaliation.**

The First Amendment guarantees every citizen the right to engage in free speech without governmental restriction. U.S. Const. amend. I. Further, the Supreme Court has made it clear that "public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). However, the Supreme Court has also recognized that the government "has interests as an employer in regulating the speech of its employees that differ significantly from those in connection with regulation of the speech of the citizenry in general." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *see also Connick v. Myers*, 461 U.S. 138, 143 (1983) ("[G]overnment offices could not function if every employment decision became a constitutional matter.").

Thus, to state a claim for First Amendment retaliation, Plaintiff must prove: (1) his speech was protected by the First Amendment, (2) his governmental employer discharged him from employment; and (3) the protected speech was a substantial or motivating factor in the employer's decision to take the adverse employment action. *McCullough v. Univ. of Ark. For Med. Scis.*, 559 F.3d 855, 865-66 (8th Cir. 2009); *Carroll v. Pfeffer*, 262 F.3d 847, 850 (8th Cir. 2001).

6

However, because a public employee's speech is protected only in certain circumstances, the Supreme Court has held the determination of whether a public employee's speech is protected against employer retaliation involves a two-step inquiry, to wit:

> The first [step] requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

*Garcetti*, 547 U.S. at 417. Whether a public employee spoke as a citizen on a matter of public concern, is a ***question of law*** for the court to be determined by the content, form, and context of a given statement. *Buehrle v. City of O'Fallon*, 695 F.3d 807, 812 (8th Cir. 2012).

## A. Plaintiff's Alleged Speech Was Not Speech on a Matter of Public Concern

To state a First Amendment retaliation claim, Plaintiff must establish the alleged speech related to some "matter of political, social or other concern to the community." *Connick*, 461 U.S. at 146. For example, in *Wright v. City of Salisbury*, the court concluded that the plaintiff-officer's letters to the Board of Aldermen and news outlets voicing concern about the mayor's directive not to enforce laws against driving while intoxicated involved a matter of public concern. 656 F. Supp. 2d 1013, 1026-27 (E.D. Mo. 2009).

7

However, "a public employee's speech as an employee 'upon matters of personal interest,' rather than speech as 'a citizen upon matters of public concern,' is not protected by the First Amendment." *Domina v. Van Pelt*, 235 F.3d 1091, 1097 (8th Cir. 2000) (quoting *Connick*, 461 U.S. at 147). "It is not enough that the topic of an employee's speech is one in which the public might have an interest." *Sparr v. Ward*, 306 F.3d 589, 594 (8th Cir. 2002). "[A] simple reference to a topic of public importance, 'incidental to the message conveyed' weighs against a finding of public concern." *Hernandez v. City of Phoenix*, 482 F. Supp. 3d 902, 915 (D. Ariz. 2020) (quoting *Descrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009)). Moreover, the "mere insertion of a scintilla of speech regarding a matter of public concern" cannot be allowed to "plant the seed of a constitutional case." *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 739 (5th Cir. 2015) (internal citations omitted).

For example, in *Hernandez*, the plaintiff-police officer sued the city after he was referred to the police department's Disciplinary Review Board for posting several memes, as well as an article about Muslim men on social media. 482 F. Supp. 3d at 909. Release of the officer's social media posts resulted in negative media attention from several news outlets. *Id.* at 909. Plaintiff argued his posts were comments on the "nature of media coverage, cultural assimilation, and spending priorities of the federal government," and therefore involved matters of public

8

concern. *Id*. at 915. The court rejected Plaintiff's argument, finding "any message related to those topics was incidental to the primary thrust of his posts, which contained little more than animus and crass attempts at humor." *Id*. The court reasoned that "[w]hile it is clear that social and political advocacy touches on a matter of public concern no matter how insensitively stated . . . there [was] no indication of such advocacy in the true content of [the plaintiff's] Facebook posts." *Id*. The court further reasoned that the plaintiff's speech related only marginally to an issue of public importance, and primarily expressed the plaintiff's hostility towards Muslins and their beliefs without "attempting to bring to light any malfeasance or governmental inefficiency." *Id*. The court therefore concluded the plaintiff did not speak on a matter of public concern. *Id*.

As in *Hernandez*, Plaintiff's alleged protected speech does not involve anything he said directly about a matter of public concern, but consists merely of a video clip from an animated sitcom that he forwarded via text to a group of other police officers used to communicate about City business. Noticeably absent from the record as an exhibit to either the original Complaint or the Amended Complaint is an actual copy of the video, stills from the video, a transcript, or any objective summary or script of the episode that would permit the court to fairly and fully evaluate the video as it is required to do. This is particularly important where Plaintiff's claim is necessarily dependent on a review of the content, form, and

9

context of the video, which is *the* "speech" Plaintiff claims is protected by the First Amendment. *Buehrle*, 695 F.3d at 812.

Rather than providing the court with the video clip at issue so the court could evaluate the content, form, and context of the speech in question for itself, Plaintiff claims in conclusory fashion that the video clip depicting "a black police officer [who] accidentally shoots himself and the media headlines the issue as 'another innocent black man shot by a cop'" is protected speech because it is "obvious satire" critical of BLM. Joint App. A-039; R. Doc. 28, at ¶ 7. However, as the District Court properly concluded, the court's inquiry must focus on Plaintiff's actual speech at the time, and "not what [he] says [he] said after the fact." *Descroachers*, 572 F.3d at 711.

Also noticeably absent are any allegations that the video actually references BLM, or more importantly, any allegation that Plaintiff circulated or included a separate, personal statement about the video or BLM. Further, Plaintiff does not (nor could he) claim the video attempts to shed light on any malfeasance or make a direct statement about a "matter of political, social or other concern to the community." *Connick*, 461 U.S. at 146. For example, there is nothing in the Amended Complaint suggesting that by sharing the video clip, Plaintiff was seeking to bring to light any wrongdoing, illegal use of government funds, or a breach of the public trust. *Compare Henry v. Johnson*, 950 F.3d 1005 (8th Cir. 2020) (holding

10

statements made by a police officer on social media, the press, and others concerning the integrity of the Missouri State Highway Patrol and the judicial system were a matter of public concern).

Instead, Plaintiff seems to argue that the video was implicitly critical of the BLM movement and the ongoing protests occurring throughout the country, including those occurring in the St. Louis metropolitan area, and that his sharing of the video clip in a group text, standing alone, is sufficient to establish his speech involved a matter of public concern. *See* App. Brief, p. 20.

The mere fact the general topic of Plaintiff's speech arguably involved one in which the public might have an interest is insufficient to state a claim as a matter of law. *Sparr*, 306 F.3d at 594. In addition, a general heightened public awareness of the BLM movement and protests at the time is also insufficient on its own to establish Plaintiff's alleged speech involved a matter of public concern. *Domina*, 235 F.3d at 1098. Moreover, the fact Plaintiff circulated the video to a private, closed-group of City police officers created to share information regarding BLM protests occurring within the City also weighs against a finding that sharing the video clip qualifies as speaking on a matter of public concern. *See Connick*, 461 U.S. at 148; *Desrochers*, 572 F.3d at 714 (reasoning that a limited audience weighs against a claim of protected speech).

Appellate Case: 21-3910    Page: 17    Date Filed: 04/22/2022 Entry ID: 5149916

At best, Plaintiff's speech related only marginally to an issue of public importance and was merely incidental to Plaintiff's primary objective, which appears to have been nothing more than a crass attempt at humor.  *See Hernandez,* 482 F. Supp. 3d at 916*; see also Tindle v. Caudell,* 56 F.3d 966, 970 (8ᵗʰ Cir. 1995) (holding white officer's appearance at a party in blackface was not speech on a matter of public concern).

Simply put, Plaintiff did not speak on a matter of public concern when he circulated the video clip, and therefore he cannot state a claim for First Amendment retaliation.  The District Court's Judgment should be affirmed.

**B.**     **Plaintiff Was Not Speaking as a Citizen When He Communicated Only to Fellow Police Department Employees, and to a Group-Chat Used by Police Department Employees for Police Business**

In addition to not involving a matter of public concern, Plaintiff's speech also does not qualify for First Amendment protection because it was "part-and-parcel" to his official duties as a City police officer and posted only in a forum connected to his official duties.

Under *Garcetti,* "'when a public employee speaks on a matter of public concern pursuant to his official duties, the speech is unprotected against employer retaliation.'" *Nagel v. City of Jamestown*, 952 F.3d 923, 929 (8th Cir. 2020) (quoting *Lyons v. Vaught*, 875 F.3d 1168, 1173 (8th Cir. 2017)) (emphasis in original).

12

"*Garcetti's* test for whether a person spoke as a citizen or as a public employee comes down to whether the speech was made 'pursuant to official responsibilities.'" *Bradley v. James*, 479 F.3d 536, 537 (8th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 424). Thus, "under the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Lyons v. Vaught*, 875 F.3d 1168, 1174 (8th Cir. 2017) (internal citation omitted). "A public employee's speech is pursuant to his employment duties 'if it is part-and-parcel of' the employee's concerns about his ability to properly execute his duties.'" *Groenewold v. Kelley*, 888 F.3d 365, 371 (8th Cir. 2018) (quoting *Lyons*, 875 F.3d at 1174). "The First Amendment does not protect a public employee's speech if it 'owes its existence to his professional responsibilities.'" *Id*. (emphasis added).

Plaintiff admits he circulated the video to a closed group of City police officers, not the public as a whole. He also admits he circulated the video using a text group-chat created to provide officers up-to-date information regarding the BLM protests within the City, at a time when the City, St. Charles County, and surrounding areas were experiencing general civil unrest. *See* Joint App. A-039; R. Doc. 28, at ¶¶ 9-10. Thus, Plaintiff's speech was made pursuant to his job duties in that it: (1) concerned a subject (i.e., response to civil unrest and protest) that falls squarely within his official duties as a police officer, and (2) was disseminated to

13

only his colleagues using a text group-chat specifically for City police officers used to share information concerning protests in and around the City. *See* Joint App. A-039; R. Doc. 28, at ¶¶ 7-10.

Therefore, in addition to not involving a matter of public concern, Plaintiff's speech does not qualify for First Amendment protection because it was "part-and-parcel" to his official duties as a City police officer and posted only in a forum connected to his official duties. For this reason also, the District Court's Judgment should be affirmed.

## C.    In the Alternative, The *Pickering/Connick* Test Weighs In Favor of Defendants

The primary focus of the *Pickering/Connick* test is to determine "whether the speech undermines the effective functioning of the public employer's enterprise." *Tindle*, 56 F.3d at 971. When considering this test, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti*, 547 U.S. at 418. Further, [b]ecause police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer." *Tindle*, 56 F.3d at 971. Moreover, "[t]he need for

14

harmony and close working relationships between co-workers in a police department is of great importance." *Id*. at 971-72.

Plaintiff admits in the Amended Complaint that at least one officer participating in the text group-chat "voiced displeasure and disagreed with the message of the shared video." Joint App. A-039; R. Doc. 28, at ¶ 11. In an effort to downplay this, Plaintiff also asserts in conclusory fashion that any displeasure or disharmony potentially generated by the sharing of the video clip was attributable to the BLM movement being a divisive issue generally.

However, not only is this allegation speculative, but as the Supreme Court held in *Connick*, Chief Struttmann was not required to "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *See Connick*, 431 U.S. at 152.

Therefore, by Plaintiff's own admission, even if Plaintiff could establish sharing the video clip qualifies for First Amendment protection (which he cannot for the reasons discussed above), the *Pickering/Connick* balancing test still would weigh in favor of Defendants, particularly in light of the greater deference afforded to law enforcement agencies tasked with maintaining public safety and order. *Tindle*, 56 F.3d at 971. On this basis, the District Court's Judgment dismissing the Amended Complaint should be affirmed.

15

**D.**   **Defendants Struttmann and Batzel Are Entitled To Qualified Immunity Because Plaintiff Fails to State a Claim for First Amendment Retaliation, and Plaintiff's Claim for Municipal Liability Under _Monell_ Also Fails**

Qualified immunity protects a government official from liability in a § 1983 action "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts apply a two-step inquiry to determine whether a defendant has qualified immunity from suit. "First, courts must consider whether, 'taken in the light most favorable to the party asserting the injury . . . the facts alleged show the [official's] conduct violated a constitutional right.'" *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004) (quoting *Saucier v. Katz*, 533 US. 194, 201 (2001)). "The existence or nonexistence of a constitutional right is, therefore, the threshold question." *Id.* The issue of qualified immunity is a question of law for the court to decide. *Littrell*, 388 F.3d at 584.

For all the reasons discussed in Parts A through C, above, Defendants Struttmann and Batzel are entitled to qualified immunity because Plaintiff's Complaint fails to allege facts establishing a violation of Plaintiff's First Amendment rights. Further, because Plaintiff's Amended Complaint fails to adequately allege an unconstitutional act by a City employee, Plaintiff also fails to state a claim against the City for municipal liability under *Monell v. Dept. of Social*

16

*Service of City of New York*, 436 U.S. 658 (1978). *See Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018) (*Monell* liability does not attach unless there has been an unconstitutional act by a municipal employee).

## CONCLUSION

Plaintiff fails to state a claim for First Amendment retaliation against Defendants for several reasons. First, to state a First Amendment retaliation claim, Plaintiff must establish the alleged speech was related to some matter of public concern. Here, the Amended Complaint is devoid of any allegations that the video clip Plaintiff shared attempts to shed light on any malfeasance or make a direct statement about a "matter of political, social or other concern to the community." *Connick*, 461 U.S. at 146. Rather, the sharing of the clip was nothing more than a crass attempt at humor.

Plaintiff's claim also fails because in addition to not involving a matter of public concern, Plaintiff's speech does not qualify for First Amendment protection because it was "part-and-parcel" to his official duties as a City police officer and posted only in a forum connected to his official duties.

Even if Plaintiff could establish sharing the video clip qualifies for First Amendment protection (which he cannot for the reasons discussed above), the *Pickering/Connick* balancing test still would weigh in favor of Defendants,

17

particularly in light of the greater deference afforded to law enforcement agencies tasked with maintaining public safety and order.

Finally, Defendants Struttmann and Batzel are entitled to qualified immunity because Plaintiff's Complaint fails to allege facts establishing a violation of Plaintiff's First Amendment rights, adequately allege an unconstitutional act by a City employee, and fails to state a claim against the City for municipal liability.

For all the reasons discussed herein, Defendants respectfully request the Court affirm the District Court's Judgment dismissing Plaintiff's claims with prejudice, and for such other relief as the Court deems just and proper.

Respectfully Submitted,

HAMILTON WEBER LLC

By /s/ John H. Kilper
   V. Scott Williams, #36177MO
   John H. Kilper, #60997MO
   200 N. Third Street
   St. Charles, MO 63301
   (636) 947-4700/Fax (636) 947-1743
   swilliams@hamiltonweber.com
   jkilper@hamiltonweber.com

Appellate Case: 21-3910   Page: 24   Date Filed: 04/22/2022 Entry ID: 5149916

*And*

Katrina Y. Morgan #60166MO
Jillian M. Mueller #65033MO
JACKSON LEWIS, P.C.
222 S. Central Avenue, Ste. 900
St. Louis, MO  63105
Office:  314-827-3939
Facsimile: 314-827-3940
katrina.morgan@jacksonlewis.com
jillian.mueller@jacksonlewis.com
*Attorneys for Defendants/Appellees*

19

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because this brief contains 5,066 words.

This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief has been prepared in a proportionally space typeface using Microsoft Word 2010 in Times New Roman 14-point font.

This brief also complies with Eighth Circuit Rule 28A(h) in that it has been scanned for viruses and found to be virus-free.

Respectfully Submitted,

HAMILTON WEBER LLC

By /s/ John H. Kilper
    V. Scott Williams, #36177MO
    John H. Kilper, #60997MO
    200 N. Third Street
    St. Charles, MO 63301
    (636) 947-4700/Fax (636) 947-1743
    swilliams@hamiltonweber.com
    jkilper@hamiltonweber.com
    *Attorneys for Defendants/Appellees*

20

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of Appellees' Brief was filed electronically with the Clerk of the Court on April 22, 2022, and was served via the Court's Electronic Filing System on Counsel for Appellant, Peter O Bruntrager, pob@law-stl.com.

/s/ John H. Kilper

21